UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

————————————

2014-1852

————————————

KENNETH BUTLER, SR,
*Plaintiff-Appellant*

v.

BALKAMP, INC.; NATIONAL AUTO PARTS ASSOCIATION;
GENUINE PARTS COMPANY CORPORATION
*Defendants-Appellees*

TIEN-I INDUSTRIAL CORPORATION, LIMITED;
YUH YEOU INDUSTRY CO., LTD.

*Defendants*

Appeal from the United States District Court for the Southern District of
Indiana in case No. 12-cv-1716, Barker, Sara Evans - District Judge

————————————

CORRECTED
BRIEF OF APPELLANT

————————————

Joseph J. Zito
DNL ZITO
1250 Conn. Avenue, N.W., Suite 200
Washington, DC 20036
202-466-3500
jzito@dnlzito.com

Counsel for Plaintiff-Appellant
Kenneth Butler, Sr.

## CERTIFICATE OF INTEREST

Counsel for the appellant Kenneth Butler, Sr., certifies the following:

1. The full name of every party or amicus represented by me is:

Kenneth Butler, Sr.,  Appellant - Plaintiff

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

NONE

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NONE

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Joseph J. Zito and Benjamin C. Deming of DNL ZITO, 1250 Connecticut Ave NW, Suite 200, Washington, DC 20036 *Trial Counsel*

Respectfully Submitted by:
  */s/ Joseph J. Zito*

**TABLE OF CONTENTS:**

I. STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF ISSUE PRESENTED ON APPEAL . . . . . . . . . . . . . . . . . 1

IV. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The District Court Failed to Consider Evidence of Infringement . . . . . . . . 4

VI.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    The Patent and the Accused Product . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VII.  THE ORNAMENTAL TOOL DESIGN . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VIII. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IX.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Facts and Evidence of Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Legal Errors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

X.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317,  (USSC 1986) . . . . . . . . . . . . . . . . . . . . . . 8

*Crocs, Inc. v. ITC*, 598 F.3d 1290 (Fed Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008). . .  4, 8, 9, 14

*Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH
        2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec. 16, 2010) . . . . . . . . . . . . 10

*Gorham Mfg. Co. v. White*, 81 U.S. 511, (USSC 1871) . . . . . . . . . . . . . . . . . . . . . 14

*Int'l Seaway Trading Corp. v. Walgreens Corp*, 589 F.3d 1233(Fed. Cir. 2013) . . 9

*Kustom Signals, Inc. v. Applied Concepts*, 264 F.3d 1326 (Fed. Cir. 2001) . . . 4, 13

LA Gear, Inc. v. Thom McAn Shoe Co., 988 F. 2d 1117, 1224 (Fed. Cir. 1993) . . 8

*Pacific Coast Marine Windshields v. Malibu Boats*, 739 F.39 694 (Fed Cir 2013) 14

*Richardson*, 597 F.3d at 1293 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed.Cir.2002). . . . . . . . . . 2

*Wing Shing,* 665 F. Supp. 2d at 357 (SDNY 2009) . . . . . . . . . . . . . . . . . . . . . . . . 9


**STATUTES**:

28 U.S.C. §1295(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. §1331     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. §1338(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
35 U.S.C. §271     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Fed. R App. P. 4(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## I.    STATEMENT OF RELATED CASES

There are no cases in any District Court or pending on appeal that relate to this matter or to the patents in suit.

## II.    JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. §1295(a)(1). This matter is on appeal from the District Court for the Southern District of Indiana in a matter claiming patent infringement. Subject matter in the district court arose under 35 U.S.C. §§271 and under 28 U.S.C. §1331 and §1338(a).  The Notice of Appeal was filed on September 23, 2014, within 30 days of the entry of final judgment on September 3, 2014.  The notice of appeal was timely under Fed. R. App. P. 4(a).

## III.    STATEMENT OF ISSUE PRESENTED ON APPEAL

(i)    Is a determination of design patent infringement an issue appropriate for summary judgement or is beauty truly in the eye of the beholder and left to the determination of a jury?

(ii)    Can a District Court ignore evidence of ordinary consumers who observed the accused device and the patent and were deceived into believing that the accused product is the same as the patented design?

-1-

(iii)   If all factual inferences are viewed in favor of Plaintiff, the nonmoving party, is it possible that a reasonable jury could return a verdict of infringement?

(iv)   Did the District Court commit reversible error in failing to make a specific finding that "that there was no genuine issue of material fact such that no reasonable jury could return a verdict for the nonmoving party" yet entering summary judgement?

(v)   Did the District Court commit reversible error in failing to make a specific finding that, when drawing all factual inferences in favor of the Plaintiff, nonmoving party, no reasonable jury could return a verdict of infringement, yet entering summary judgement?

(vi)   Did the District Court Judge commit reversible error in substituting its own opinion as a non-ordinary consumer for that of the ordinary consumer in finding non-infringement?

## IV.   STANDARD OF REVIEW

The Federal Circuit reviews a district court's grant of summary judgment without deference. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed.Cir.2002).

## V.    STATEMENT OF THE CASE

### Background

Plaintiff, a manufacturer and seller of tools, through is company KB Tools, Inc. observed the accused product on sale at Defendant NAPA's retail store and immediately recognized it as substantially similar to his own product and his patent.  Plaintiff was concerned that customers of NAPA who in some instances were his customers and/or potential customers may believe that the accused tool was manufactured by Plaintiff.  Plaintiff purchased the accused tool and presented his design patent drawings and the accused product to over two dozen ordinary observers to determine if his concerns were warranted.  Twenty eight of the twenty eight persons queried agreed that the accused tool was substantially similar in visual appearance to the design patent drawings and that they might believe the NAPA tool to have been manufactured by Plaintiff.

Plaintiff, Mr. Kenneth Butler, on his own contacted Defendants NAPA and General Tool to attempt to resolve the issue without success.  Plaintiff filed suit.

Plaintiff presented his survey evidence to the District Court.   However, instead of considering the evidence as raising a genuine issue of the potential for ordinary observer confusion, the District Court ignored this evidenced and instead substituted its own personal judgement.

**The District Court Failed to Consider Evidence of Infringement:**

Summary Judgement of non-infringement was entered in this matter on

September 3, 2014, on briefing which concluded on January 31, 2014. The District

Court determined, without any hearing or testimony, that:

> For the foregoing reasons, we hold that the accused product does not infringe the '646 patent. Accordingly, we GRANT Defendants' Motion for Summary Judgment as to the issue of infringement. Given our non-infringement finding, we do not address the issue of validity of the patent. Final judgment shall enter accordingly. (A0014)

The District Court recognized that:

> **The sole test for determining whether a design patent has been infringed is the ordinary observer test.** *Egyptian Goddess*, 543 F.3d at 678. Under this test, a product is infringed if an ordinary observer, familiar with the prior art and giving such attention as a purchaser would usually give, "would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc.*, 598 F.3d at 1303 (citing *id.* at 681). Although patent infringement is a question of fact, "summary judgment may be appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (internal citations and quotation marks omitted). (A0009)

However, the District Court did not consider, or even discuss, the evidence

presented by Plaintiff demonstrating actual confusion by ordinary observers.

Plaintiff submitted unchallenged survey evidence as Exhibit A to its opposition to

the motion for summary determination of non-infringement. (A0030-0032)

Plaintiff, Mr. Butler, an 85year old veteran, in September 2011, prior to

-4-

filing suit, personally visited ordinary observers in automobile parts and repair facilities who were purchasers and/or likely purchasers of the accused automotive tool to determine if he had an actual cause for concern, prior to filing suit.  Mr. Butler collected 28 signatures of individuals who indicated they would be confused or deceived.[1]

This survey evidence was produced to Defendant as part of Plaintiff's Initial Disclosures and Bates numbered KB00001 - KB00003.   The survey was submitted as Exhibit A to Plaintiff's Opposition to Summary Judgement of Non-Infringement and market dkt entry #35-1 pages 1-3.  The District Court never considered this evidence of actual confusion.

## VI.    STATEMENT OF THE FACTS

### The Patent and the Accused Product

"Mr. Butler is the inventor and owner of the '646 patent, entitled "Tool Handle." The '646 Patent was issued on January 11, 2005, and is a design patent that claims the design for a tool handle that is used with socket wrench sets. The only claim of the '646 patent claims "[t]he ornamental design for a tool handle, as shown and described." The patent includes the seven figures pictured here as well as a cover page that includes a short description of each figure. (A0002)

---

[1] Subsequent to the filing of the appeal, Mr. Butler collected an additional 800 signatures of individuals who observed the device and the design patent and believed them to be confusingly similar and only 4 people who did not (A0033-A0062).  A colleague of Mr. Butler, Mr. John McIntire also colleted the signatures of 9 people who found the similarities confusing. (A0063-A0065)



FIGURE 1 of  D500,646

Balkamp is an Indiana corporation and subsidiary of Genuine Parts, which is a Georgia corporation specializing in replacement parts for cars. Balkamp distributes automotive aftermarket products in the NAPA Auto Parts System. NAPA is a Michigan nonprofit corporation whose parent is also Genuine Parts. Defendants sell tool handles under the name "Spinning Impact Extension" that Plaintiff alleges apply the patented design of the '646 patent or a colorable imitation thereof.  Defendants' Spinning Impact Extension comes in three sizes, shown below:        (A003)



# VII.          The Ornamental Tool Design

The District Court determined that 5 of the seven visual elements of the patented tool were ornamental and that only two elements were functional. (A0007):



**Element Description:**

1 - Front (male) square drive or Front adapter

2 - Cylindrical extension shaft or Cylindrical front end portion

3 - Tapered front end

4 - Unknurled, reduced diameter front end or Untapered front end

5 - Knurled handle or Knurled portion of the handle

6 - Beveled or tapered back end

7 - Rear (female) square drive or Square back adaptor

The parties also agree that elements 1 and 7 described above, to wit, the front (male) square drive end and the rear (female) square drive end, are

-7-

solely functional and that the remaining design features, elements 2 through 6, are either wholly, or at least primarily, ornamental. (A0007)

## VIII.  SUMMARY OF THE ARGUMENT

Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence.  *LA Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117, 1224 (Fed. Cir. 1993).  However, when a defendant moves for summary judgment of non-infringement, the burden falls on the defendant to show that there is no infringement.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party must first prove that there is an absence of evidence to support the non-moving party's case. *Id.*  Plaintiff has already produced survey results in discovery; (A0030 -A0032)  Defendant did not provided any contrary evidence and thus did not even begin to meet its burden of proving an absence of evidence of infringement.

Design patent infringement focuses only on ornamental aspects of the patented design.  *Richardson*, 597 F.3d at 1293 (Fed. Cir. 2010).  The formerly-used "point of novelty" test was abandoned by the Federal Circuit in 2008.  In its place, the court adopted the "ordinary observer" test as the sole test for infringement.  *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 678 (Fed. Cir. 2008).  "The patentee must establish that an ordinary observer, familiar with the

prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Richardson,* 597 F.3d at 1295.

A patented design it is entitled to a claim scope commensurate with its ornamentally. *Richardson v. Stanley Works, Inc.,* 597 F. 3d 1288, 1293-1294 (Fed. Cir. 2010) also *Int'l Seaway Trading Corp. v. Walgreens Corp,* 589 F.3d 1233,1240 (Fed. Cir. 2013).

In some cases, where the claimed design and the accused design are plainly dissimilar, a comparison to the prior art may not be necessary to determine non-infringement. However, in this case, where the patented design and the accused product are strikingly similar, prior art can play an integral role in an infringement analysis, accentuating the similarities and differences between the accused design and the patented design. A robust array of generally similar but distinguishable prior art may cause the ordinary observer to find greater similarity to the accused product. *See Egyptian Goddess*, and *Wing Shing,* 665 F. Supp. 2d at 361 ("if the patent and the prior art are particularly close, the scale of comparison between the accused and patented designs shrinks."). Simply stated, prior art can serve as a guiding reference point, informing the hypothetical ordinary observer's analysis. In this matter, the patented design is quite dissimilar from the prior art and the accused device adopts the overall appearance of the patented design.

## IX.    ARGUMENT

### Facts and Evidence of Confusion

To the ordinary observer, the design of the '646 Patent and the design of the Accused Product would appear visually similar.  (See A0030-A0032 and A0033-A0065)  In terms of the Federal Circuit test, the ordinary observer, familiar with the prior art and giving such attention as an ordinary observer usually gives, would be deceived into thinking that the accused product was the same as the patented design.  Plaintiff provided twenty eight instances of ordinary observers confused or "deceived" by observation into thinking that the accused device was depicted in the design patent drawings.   Defendant did not refute this evidence.  The District Court did not address this evidence in its decision.

It is important to note that in the context of a tool handle, the ordinary observer would not generally give great attention to the design of the product.  This is in contrast, for example, to the *Fanimation* case cited by Defendants in their brief.  In that case, the product at issue was a ceiling fan designed so that the fan blades look like palm leaves.  As the court in that case recognized, "fans with unique blades are purchased by "ordinary observers" who have a desire for fans with unique blades. Thus, it is difficult to imagine that these individuals would not pay reasonably close attention to the patterns on those fan blades."  *Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist.

LEXIS 134526 (S.D. Ind. Dec. 16, 2010) at p. 11.  In contrast, the purchaser of a tool handle is not primarily motivated in finding a unique design, and would be less likely to pay close attention to the subtle differences between the patented design and the design of the accused product.

The overall impression of the '646 Patent's tool handle is that of a visually pleasing tool handle.  The minute differences do not alter the overall impression.  It is this overall ornamental impression that the ordinary observer would rely upon use when purchasing a tool and thus a finding of infringement must also rely upon the overall impression, not the minute differences.

The patented design provides the visual impression of a balanced tool.  The central portion of the patented design and the accused device provides the visual impression of a solid grip area.  The balanced and simple elegance of the front tapered end flowing directly into the square drive is visually distinct from the awkward examples in the prior art and unites the visual impression of the overall appearance of the patented design and the accused device.  The rear portion of both, balance the front end and complete the overall impression of symmetry. (see A0011 where the District Court agreed that there were "certain similarities":



**'646 Patent Design**                    **Spinning Impact Extension**

It is true that there are certain similarities between the two products, including the cylindrical body of both tool handles with extensions protruding from the front end of the main body. However, despite these general similarities, it is obvious when compared

The patented design and the accused device provide a connecting link between the receptacle at the back end and the square drive at the front end. The uniquely visually appealing, balanced and unified impression presents a common visual appearance to the ordinary observer. This similarity is a matter of fact to be determined by a presentation of evidence to the trier of fact, not decided on summary judgment.

Defendants' motion for non-infringement was predicated entirely on attorney argument, not on fact or survey evidence. The need for fact, not argument, is nowhere more compelling than in a design patent, where the proper analysis relies on determining what an ordinary observer would perceive.

**Legal Errors**

Although the District Court recognized that in order to grant summary judgement, the Court must determine that no reasonable jury could find otherwise. (see A0009):

> Although patent infringement is a question of fact, "summary judgment may be appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (internal citations and quotation marks omitted).

However, the District Court made no such finding.

The District Court instead simply substituted its own personal judgement for that of the ordinary observer and found that, in the opinion of the Court, "a side-by-side comparison of the '646 patent design and the Spinning Impact Extension shows that the overall effect of the accused product is sufficiently distinct from the '646 patent design such that an ordinary observer would not be deceived into believing that the patented design and the accused product are the same." (A0010) This is the simply the opinion of the Court and comes with no finding that no reasonable jury could differ. A District Court must specifically find that no reasonable jury could differ, it can not leave this for inference on appeal.

The District Court recognized that the accused product did bear similarities to the design patent:

> It is true that there are certain similarities between the two products,

-13-

including the cylindrical body of both tool handles with extensions protruding from the front end of the main body. (A0010) In short, it is true as Plaintiff argues that the patented design and the accused product share certain general similarities, to wit, they are both tool handles with unprotected functional front and back ends that have cylindrical main bodies with knurling located somewhere on the handle. (A0013)

but ignored the impact that such similarities may have on an ordinary observer or on a reasonable jury. *See Pacific Coast Marine Windshields v. Malibu Boats*, 739 F.39 694 at 701 (Fed Cir 2013):

> Thus, the test for design patent infringement is not identity, but rather sufficient similarity—whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs", "`inducing him to purchase one supposing it to be the other.'" *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 683 (Fed.Cir.2008) (quoting *Gorham*, 81 U.S. at 528).

The District Court has made no finding as to the reasonable findings available to a reasonable jury and thus has not properly found a basis for a grant of summary judgement.

## IX.    CONCLUSION

Plaintiff, a manufacturer and seller of tools, through is company KB Tools, Inc. observed the accused product on sale at Defendant NAPA's retail store and immediately recognized it as substantially similar to his own product and his patent.  Plaintiff was concerned that customers of NAPA who in some instances were his customers and/or potential customers may believe that the accused tool

was manufactured by Plaintiff.  Plaintiff purchased the accused tool and presented his design patent drawings and the accused product to over two dozen ordinary observers to determine if his concerns were warranted.  Twenty eight of the twenty eight persons queried agreed that the accused tool was substantially similar in visual appearance to the design patent drawings and that they might believe the NAPA tool to have been manufactured by Plaintiff.

Plaintiff, Mr. Kenneth Butler, on his own contacted Defendants NAPA and General Tool to attempt to resolve the issue without success.  Plaintiff filed suit.

Plaintiff presented his survey evidence to the District Court.   However, instead of considering the evidence as raising a genuine issue of the potential for ordinary observer confusion, the District Court ignored this evidenced and instead substituted its own personal judgement.

The District Court made several errors. (i) The determination of design patent infringement an issue appropriate for determination by a jury.  (ii) A District Court cannot ignore unrefuted evidence of ordinary consumers who observed the accused device and the patent and were deceived into believing that the accused product is the same as the patented design.  (iii) When all factual inferences are viewed in favor of Plaintiff, the nonmoving party, a reasonable jury could return a verdict of infringement. (iv) The District Court entered summary judgement without first making a specific finding that there was no genuine issue of material

-15-

fact such that no reasonable jury could return a verdict for the nonmoving party.

(v)  The District Court entered summary judgement without first making a specific finding that, when drawing all factual inferences in favor of the Plaintiff, nonmoving party, no reasonable jury could return a verdict of infringement. (vi) The District Court Judge commit reversible error in substituting its own opinion as a non-ordinary consumer for that of the ordinary consumer in finding non-infringement.

December 5, 2014                                Respectfully Submitted

                                               By:   /s/ Joseph J. Zito
                                               DNL ZITO
                                               1250 Connecticut Ave, NW
                                               Suite 200
                                               Washington, DC 20036

# CERTIFICATE OF COMPLIANCE

Undersigned Counsel for the appellant Classen Immunotherapies, Inc., certifies that the Corrected Opening Brief of Appellant, filed on December 5, 2014, complies with the type and volume limitations of the Federal Rules of Appellate Procedure 32(a)(7)(B).   The Brief is 16 pages in length.

Appellant's Corrected Opening Brief complies with the typeface requirements of the Federal Rules of Civil Procedure 32(a)(5) or Federal Rules of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced, 14 point typeface.

Counsel further certifies that the only changes made to the brief were those specified in Docket #11 Order to correct brief.  Specifically: (i) section titles were changed to indicate were the Summary of the Argument is found; (ii) the docket sheet and letter are no longer attached to the Brief; (iii) The Brief is not bound with the appendix.


Respectfully Submitted by:

  _/s/ Joseph J. Zito_
Joseph J. Zito
DNL ZITO
1250 Connecticut Ave NW
Suite 200
Washington, DC 20036

-17-

## CERTIFICATE OF SERVICE

I hereby certify that Appellant's Corrected Opening Brief was served on all counsel of record through the CM/ECF system of the Federal Circuit on the 5th day of December, 2014 and by e-mail.

December 5, 2014                    Respectfully Submitted


                                   By:   /s/ Joseph J. Zito

                                   DNL ZITO
                                   1250 Connecticut Ave, NW
                                   Suite 200
                                   Washington, DC 20036

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENNETH  BUTLER, SR. an individual,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
BALKAMP INC.,　　　　　　　　　　)
NATIONAL AUTO PARTS　　　　　　　)　　　1:12-cv-01716-SEB-DML
ASSOCIATION,　　　　　　　　　　　)
GENUINE PARTS COMPANY　　　　　　)
CORPORATION,　　　　　　　　　　　)
TIEN-I INDUSTRIAL CORPORATION,　　)
LIMITED,　　　　　　　　　　　　　)
 YUH YEOU INDUSTRY CO., LTD,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendants.

## ORDER ON PENDING MOTIONS

This suit concerns the alleged infringement by Defendants Balkamp, Inc.

("Balkamp"), National Automotive Parts Association ("NAPA"), Genuine Parts

Company Corporation ("Genuine Parts"), Tien-I Industrial Corporation, Limited, and

Yuh Yeou Industry Co., Ltd. (collectively, "Defendants") of United States Design Patent

No. D500,646 S ("the '646 patent") held by Plaintiff Kenneth Butler, Sr. ("Plaintiff" or

"Mr. Butler").  This matter comes before the Court to construe certain patent terms

relevant to the underlying infringement action and also for ruling on Defendants' Motion

for Summary Judgment of Non-Infringement and Invalidity [Docket No. 31], filed on

December 31, 2013.

1

## Factual Background

**The '646 Patent**

Mr. Butler is the inventor and owner of the '646 patent, entitled "Tool Handle." The '646 Patent was issued on January 11, 2005, and is a design patent that claims the design for a tool handle that is used with socket wrench sets. The only claim of the '646 patent claims "[t]he ornamental design for a tool handle, as shown and described." The patent includes the seven figures pictured here as well as a cover page that includes a short description of each figure.



*Fig. 1*



**The Accused Product**

Balkamp is an Indiana corporation and subsidiary of Genuine Parts, which is a Georgia corporation specializing in replacement parts for cars.  Balkamp distributes automotive aftermarket products in the NAPA Auto Parts System.  NAPA is a Michigan nonprofit corporation whose parent is also Genuine Parts.  Defendants sell tool handles under the name "Spinning Impact Extension" that Plaintiff alleges apply the patented design of the '646 patent or a colorable imitation thereof.  Defendants' Spinning Impact Extension comes in three sizes, shown below:



¾" Drive – 10" Length (Part # 61-6725a)

**The Prior Art**

The scope and content of the prior art for the '646 patent is apparently not in dispute.  During prosecution of the '646 patent, the Patent Office cited three U.S. design patents, shown below:

3



**D307,703**          **D319,562**          **D475,589**

The Patent Office also cited the following five U.S. utility patents during prosecution of

the '646 patent, shown below:



**5,033,337**          **5,680,800**          **5,752,418**

**5,813,296**                              **6,604,441**

4

A0004

The prior art also includes the following six uncited tool handle references, identified and shown below that were not before the Patent Office: (1) U.S. Patent No. 2,071,543, entitled "Revolving Grip Tool," filed September 14, 1935 and issued February 23, 1937 ("*Kress*"); (2) Williams M-110 Extension Handle, which is a commercial embodiment of *Kress*, publicly available as early as 1955 ("M-110"); (3) U.S. Patent No. 3,650,165, entitled "Ratchet Tool," filed November 21, 1969 and issued March 21, 1972 ("*Wolfe*"); (4) U.S. Patent No. 3,575,069, entitled "Ratchet and Speed Wrench Combination," filed July 29, 1969 and issued April 13, 1971 ("*White*"); (5) Snap-On® SG-6, which was described in a printed publication and on sale in the United States since at least 1930 ("SG-6"); and (6) U.S. Patent No. 1,775,402, entitled "Wrench Outfit," filed January 26, 1925 and issued September 9, 1930 ("*Mandl*").



***Kress***         **M-110**         ***Wolfe***

5



*White*                **Snap-On SG-6**                *Mandl*

**The Instant Litigation**

On November 21, 2012, Mr. Butler filed a complaint against Defendants alleging that the Spinning Impact Extension infringes his '646 Patent. On December 3, 2013, the parties filed a joint claim construction statement and, on December 31, 2013, Defendants filed their initial *Markman*/claim construction brief as well as a motion for summary judgment of non-infringement of the '646 Patent. Defendants have also raised invalidity arguments as to the patent-in-suit. Additional facts are set forth below as needed.

<u>Legal Analysis</u>

**I.      Claim Construction**

Mr. Butler's claim is for the ornamental design of a tool handle, as shown and described in the '646 Patent. In their joint claim construction statement, the parties agreed that the '646 patent drawings disclose the following seven features:

6



| Element | Description |
|---------|-------------|
| 1 | Front (male) square drive or Front adapter |
| 2 | Cylindrical extension shaft or Cylindrical front end portion |
| 3 | Tapered front end |
| 4 | Unknurled, reduced diameter front end or Untapered front end |
| 5 | Knurled handle or Knurled portion of the handle |
| 6 | Beveled or tapered back end |
| 7 | Rear (female) square drive or Square back adaptor |

The parties also agree that elements 1 and 7 described above, to wit, the front (male) square drive end and the rear (female) square drive end, are solely functional and that the remaining design features, elements 2 through 6, are either wholly, or at least primarily, ornamental. It is well-established that design patents do not protect the

7

A0007

functional elements of the patented design, but rather only the design's "novel,
ornamental features." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.
Cir. 1997) (citations omitted). "Where a design contains both functional and non-
functional elements, the scope of the claim must be construed in order to identify the non-
functional aspects of the design as shown in the patent." *Egyptian Goddess, Inc. v.
Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (quoting *id.*).  We agree with
the parties that the '646 patent does not protect either the front or rear square drives of the
tool handle because those aspects of the design are purely functional.

The parties disagree regarding the extent to which the Court should attempt to
verbally describe the claimed design beyond merely delineating between the functional
and ornamental aspects of the '646 patent.  The Federal Circuit has often cautioned
against "excessive reliance on a detailed verbal description" in design infringement cases
such as this one.  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir.
2010).  Instead, "design patents are typically claimed according to their drawings, and
claim construction must be adapted to a pictorial setting." *Richardson v. Stanley Works,
Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (citing *id.* at 1302-03).  Although district
courts do maintain the discretion to perform a verbal claim construction when necessary
under the circumstances, *Egyptian Goddess*, 543 F.3d at 679-680, we do not believe a
detailed verbal construction is necessary here.  Accordingly, having reviewed the patent
and considering the guidance set forth in *Egyptian Goddess*, we adopt the following
claim construction for the single claim of the '646 patent: "The ornamental design of a

tool handle, as shown and described, excluding the functional front and rear square drive ends." The construction includes the seven figures of the '646 patent as pictured *supra*.

## II. Infringement

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence." *Richardson*, 597 F.3d at 1295. The sole test for determining whether a design patent has been infringed is the ordinary observer test. *Egyptian Goddess*, 543 F.3d at 678. Under this test, a product is infringed if an ordinary observer, familiar with the prior art and giving such attention as a purchaser would usually give, "would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc.*, 598 F.3d at 1303 (citing *id.* at 681). Although patent infringement is a question of fact, "summary judgment may be appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (internal citations and quotation marks omitted).

Courts must factor out the functional aspects of the design elements in assessing whether a design patent has been infringed, but in doing so, they "must not convert the overall infringement test to an element-by-element comparison." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). Rather, "[i]t is the appearance of a design as a whole which is controlling in determining infringement" and "[t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." *OddzOn Prods.*, 122 F.3d at 1405. In other

9

A0009

words, in evaluating infringement, the court determines whether "the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." *Amini Innovation*, 439 F.3d at 1371.

The Federal Circuit has recognized that "[i]n some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. In such a case, the court may make a determination of non-infringement without comparing the claimed and accused designs with the prior art. In closer cases, however, examination of the prior art can be a particularly important tool in reaching an infringement determination. "[I]f the patent and the prior art are particularly close, the scale of comparison between the accused and patented design shrinks." *Wing Shing Prods. (BVI) Co. Ltd. V. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 361 (S.D.N.Y. 2009). Thus, "[w]here there are many examples of similar prior art designs … differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678.

Here, a side-by-side comparison of the '646 patent design and the Spinning Impact Extension shows that the overall effect of the accused product is sufficiently distinct from the '646 patent design such that an ordinary observer would not be deceived into believing that the patented design and the accused product are the same. In the

illustrations below, the patented design is on the left and the accused product is on the right.



**'646 Patent Design**                    **Spinning Impact Extension**

It is true that there are certain similarities between the two products, including the cylindrical body of both tool handles with extensions protruding from the front end of the main body. However, despite these general similarities, it is obvious when compared side-by-side that the Spinning Impact Extension has none of the significant focal point ornamental features of the '646 patent, and thus, creates a clearly distinguishable overall visual impression than the patented design. The differences between the two products include:

(1) *The knurled pattern*: Although both products have a main cylindrical body, the '646 patent is knurled along its entire length while there are two obviously unknurled portions of the accused product at each end of the cylindrical body, each of which contain a distinct unknurled channel that is not at all similar to the ornamental knurled design in the '646 patent.

(2) *The beveled back end*: Another feature of the '646 patent is the beveled or tapered back end of the tool handle. The back end of the Spinning Impact Extension, however, not only is straight-edged with no taper or bevel, but also has an extension protruding from the back that is not shown in the '646 patent design.

11

(3) *Design of the extension housing*:  Both the '646 patent and the accused product have extensions protruding from the cylindrical handle, but the ornamental features of the '646 patent's extension housing are clearly distinguishable from the Spinning Impact Extension.  Unlike the '646 patent design, which includes a reduced diameter cylindrical portion, a tapered portion, and a short extension shaft, the handle of the accused product has a blunt straight-edged end with no tapered section.  The accused product's extension shaft is also significantly longer than the patented design and protrudes directly from the main cylindrical handle as opposed to protruding from a tapered section like that shown in the '646 patent.

Focusing on the overall visual impression that the ornamental features of the '646 patent create, it is obvious that the accused product embodies an overall effect that is clearly dissimilar from that of the patented design and thus cannot cause confusion in the marketplace.  The patented design appears more compact and streamlined than the accused product due largely to the tapered design of the extension housing and shorter extension shaft as well as the beveled portion on the rear end of the handle, all of which create an overall impression of a tool handle with rounded, clean lines.  The accused product, on the other hand, appears more narrow and elongated overall as a result of the longer extension shaft without a tapered portion at the front end, coupled with the extension protruding from the back end of the accused tool handle that is not part of the '646 patent design.

The accused product also appears boxier and sharper overall because of the blunt, straight edges at both ends of the cylindrical body of the tool handle, which is in contrast to the tapered feel of the '646 patent design which gives the appearance of a smoother transition between the cylindrical main body and each end.  The straight edges of the accused design, coupled with the lack of knurling on each end of its cylindrical body

12

A0012

gives the visual effect of there being three distinct sections of the Spinning Impact Extension, while the tapered front and beveled back of the patented design gives the overall impression that it is one solid and unified piece.

In our view, the overall impression created by the '646 patent is sufficiently dissimilar from that of the Spinning Impact Extension that we need not reference the prior art in reaching our determination that the accused product does not infringe the '646 patent. However, were we to consider the prior art, it would buttress our conclusion that the '646 patent is not infringed by Defendant's product. Plaintiff argues that the dissimilar ornamental features discussed above are merely "minute differences," but the fact that the prior art for ornamental tool handles is fairly robust confirms that the ordinary observer, familiar with the prior art, would not view the differences between the Spinning Impact Extension and the patented design as "minute," taking note instead of those differences, and thus being less likely to confuse the accused product with the '646 patent design.

In short, it is true as Plaintiff argues that the patented design and the accused product share certain general similarities, to wit, they are both tool handles with unprotected functional front and back ends that have cylindrical main bodies with knurling located somewhere on the handle. But such a broad comparison ignores the specific ornamental features of the '646 patent. Moreover, if we were to limit our analysis to such a high scale level of comparison, numerous prior art tool handles would be included, as shown *supra*. Accordingly, for the reasons detailed above, we hold that

13

A0013

the accused product, Defendants' Spinning Impact Extension, does not infringe the '646 patent design.

## III.  Invalidity

Having found that Defendant's product does not infringe on the '646 patent, we turn next to the question of whether the validity issue has been rendered moot.  Here, Defendants have raised the issue of validity only as an affirmative defense to Plaintiff's infringement claim and have not filed a counterclaim seeking a declaratory judgment of patent invalidity.  Although Defendants included in their answer a prayer for relief that declares the '646 patent invalid, such a generalized, conclusory reference to invalidity is insufficient to constitute a counterclaim.  Having found that the accused product does not infringe the '646 patent, we need not address Defendants' invalidity affirmative defense.[1] *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (holding that there it was unnecessary to address the defendant's arguments related to invalidity because the court's finding of non-infringement "moots any affirmative defense of invalidity").

## IV.  Conclusion

For the foregoing reasons, we hold that the accused product does not infringe the '646 patent.  Accordingly, we <u>GRANT</u> Defendants' Motion for Summary Judgment as to the issue of infringement.  Given our non-infringement finding, we do not address the issue of validity of the patent.  Final judgment shall enter accordingly.

---

[1] Even if Defendants had properly filed an invalidity counterclaim, the Court, in its discretion need not address the invalidity argument, given our finding of non-infringement. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370-71 (Fed. Cir. 2004).

14

A0014

IT IS SO ORDERED.

Date: _____ 9/3/2014 _____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Benjamin C. Deming
DNL ZITO
bdeming@dnlzito.com

Joseph J. Zito
DNL ZITO
jzito@dnlzito.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

John M. Bowler
TROUTMAN SANDERS, LLP
john.bowler@troutmansanders.com

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENNETH  BUTLER, SR. an individual,   )
   )
                      Plaintiff,   )
   )
                      vs.   )      1:12-cv-01716-SEB-DML
   )
BALKAMP INC.,   )
NATIONAL AUTO PARTS   )
ASSOCIATION,   )
GENUINE PARTS COMPANY   )
CORPORATION,   )
TIEN-I INDUSTRIAL CORPORATION,   )
LIMITED,   )
YUH YEOU INDUSTRY CO., LTD,   )
   )
                Defendants.   )

## JUDGMENT

Pursuant to the Court's ruling simultaneously entered on this date, final judgment is hereby entered in favor of Defendants and against Plaintiff.

IT IS SO ORDERED.

Date: _____9/3/2014_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Benjamin C. Deming
DNL ZITO
bdeming@dnlzito.com

Joseph J. Zito
DNL ZITO
jzito@dnlzito.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

John M. Bowler
TROUTMAN SANDERS, LLP
john.bowler@troutmansanders.com



US00D500646S

(12) **United States Design Patent** (10) Patent No.: **US D500,646 S**
Butler, Sr.                                              (45) Date of Patent: ** **Jan. 11, 2005**

(54) **TOOL HANDLE**

(76) Inventor: **Kenneth Butler, Sr.,** Box 23, Munyan Rd., Putnam, CT (US) 06260

(**) Term: **14 Years**

(21) Appl. No.: **29/182,172**

(22) Filed: **May 21, 2003**

**Related U.S. Application Data**

(62) Division of application No. 08/421,220, filed on Apr. 13, 1995, now abandoned.

(51) **LOC (7) Cl.** ...................................................... **08-05**
(52) **U.S. Cl.** ............................................ **D8/29; D8/107**
(58) **Field of Search** ................................ D8/14, 29, 82, D8/83, 107; 81/177.1, 177.2, 177.85, 58.1, 489, 124.4

(56) **References Cited**

U.S. PATENT DOCUMENTS

| D307,703 S | * | 5/1990 | Tomasula | .................... | D8/107 |
| 5,033,337 A | * | 7/1991 | Thomas, III | ............... | 81/177.2 |
| D319,562 S | * | 9/1991 | Ballard | ......................... | D8/29 |

| 5,680,800 A | * | 10/1997 | Sharpe | ....................... | 81/177.2 |
| 5,752,418 A | * | 5/1998 | Robins | ....................... | 81/177.2 |
| 5,813,296 A | * | 9/1998 | Hoff et al. | ............... | 81/177.85 |
| D475,589 S | * | 6/2003 | Wilkinson | ..................... | D8/29 |
| 6,604,441 B2 | * | 8/2003 | Lin | ............................ | 81/177.2 |

* cited by examiner

*Primary Examiner*—Philip S. Hyder
(74) *Attorney, Agent, or Firm*—Dougherty, Clements, Hofer & Bernard

(57) **CLAIM**

The ornamental design for a tool handle, as shown and desribed.

**DESCRIPTION**

FIG. **1** is perspective view of a tool handle, showing my new design;
FIG. **2** is a left end view thereof;
FIG. **3** is a front view thereof;
FIG. **4** is a right end view thereof;
FIG. **5** is a back view thereof;
FIG. **6** is a rear view thereof; and,
FIG. **7** is a bottom view thereof.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**    Jan. 11, 2005    Sheet 1 of 3    **US D500,646 S**

# *Fig.1*





Fig.4

Fig.3

Fig.5

Fig.2



*Fig. 6*

*Fig. 7*